IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALICIA RAE DEJESUS, | : | CIVIL NO.: 1:23-cv-00977 |
| | : | |
| Plaintiff, | : | (Magistrate Judge Schwab) |
| | : | |
| v. | : | |
| | : | |
| MARTIN O'MALLEY,[1] | : | |
| *Commissioner of the Social Security* | : | |
| *Administration*, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

### I.  Introduction.

This social security action is brought under 42 U.S.C. § 405(g).  Plaintiff Alicia Rae Dejesus ("Dejesus") seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for supplemental security income under Title XVI of the Social Security Act.  We have jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).  For the reasons set

---

[1] Martin O'Malley is now the Commissioner of Social Security, and he is automatically substituted as the defendant in this action. *See* Fed. R. Civ. P. 25(d) (providing that when a public officer sued in his or her official capacity ceases to hold office while the action is pending, "[t]he officer's successor is automatically substituted as a party"); 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

forth below, we will affirm the Commissioner's decision and enter judgment in favor of the Commissioner.

## II. Background and Procedural History.[2]

We refer to the transcript provided by the Commissioner. *See docs. 9* to *9-9, 10* to *10-2*.[3]  On March 13, 2020, Dejesus filed an application for supplemental security income alleging that she became disabled on March 1, 2018. *Admin. Tr.* at 10, 41.  She listed her conditions as: (1) borderline personality disorder; (2) generalized anxiety disorder; (3) major depressive disorder; (4) post traumatic stress disorder ("PTSD"); (5) mood disorder; and (6) asthma. *Id*. at 111, 119.  After the Commissioner denied her claim at the initial and reconsideration levels of administrative review (*id*. at 111 and 119), Dejesus requested an administrative hearing (*id*. at 126).  On February 21, 2021, Dejesus, who was represented by counsel, testified at a telephonic hearing before Administrative Law Judge ("ALJ") Gwendolyn M. Hoover. *Id*. at 41.  On April 27, 2021, the ALJ denied Dejesus's claim for benefits. *Id*. at 41–50.  Dejesus appealed the ALJ's decision to the

---

[2] Because the facts of this case are well known to the parties, we do not repeat them here in detail.  Instead, we recite only those facts that bear on Dejesus's claims.

[3] When citing to the administrative transcript, we cite to the page numbers on the bottom corner of each page.

Appeals Council, which subsequently vacated the ALJ's April 2021 decision, and remanded the case to the ALJ with instructions to, among other things, "obtain evidence from a medical expert related to the nature and severity of and functional limitations resulting from the claimant's impairments." *Id*. at 33–34.

On remand, the ALJ held a telephonic hearing. *Id*. at 57.  Dejesus and a vocational expert testified at the hearing. *Id*. at 58.  There was no mention of additional evidence from a medical expert.  *Id*. at 55–86.

By a decision dated July 25, 2022 ("July 2022 Decision"), the ALJ again determined that Dejesus was not disabled since March 13, 2020, the date her application was filed. *Id*. at 8, 24.  Dejesus appealed the July 2022 Decision to the Appeals Council, which denied her request for review. *Id*. at 1–6.  This makes the ALJ's July 2022 Decision the final decision of the Commissioner subject to judicial review by this Court.

On June 13, 2023, Dejesus, represented by counsel, began this action by filing a complaint seeking review of the Commissioner's decision denying her claim. *See doc. 1*.  She requests that the court reverse and set aside the Commissioner's decision and grant such further relief as is justified, including the award of attorney's fees. *Id*. at 7–8 (Wherefore Clause).

The parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c), and the case was referred to the undersigned. *Doc. 7*.  The

3

Commissioner then filed an answer and certified transcripts of the administrative proceedings. *Docs. 8–10.*  The parties filed briefs (*see docs. 14, 18*), and this matter is ripe for decision.

## III.  Legal Standards.

### A.  Substantial Evidence Review—the Role of This Court.

When reviewing the Commissioner's final decision denying a claimant's application for benefits, "the court has plenary review of all legal issues decided by the Commissioner." *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). But the court's review of the Commissioner's factual findings is limited to whether substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019).  "[T]he threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154.  Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

Substantial evidence "is less than a preponderance of the evidence but more than a mere scintilla." *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995).  A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict

created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).

But in an adequately developed factual record, substantial evidence may be

"something less than the weight of the evidence, and the possibility of drawing two

inconsistent conclusions from the evidence does not prevent [the ALJ's] finding

from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*,

383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is

supported by substantial evidence the court must scrutinize the record as a whole."

*Leslie v. Barnhart*, 304 F.Supp.2d 623, 627 (M.D. Pa. 2003).

The question before this court, therefore, is not whether Dejesus is disabled,

but whether substantial evidence supports the Commissioner's finding that she is

not disabled and whether the Commissioner correctly applied the relevant law.

### B.  Initial Burdens of Proof, Persuasion, and Articulation for the ALJ.

To receive benefits under Title XVI of the Social Security Act, a claimant

generally must demonstrate an inability "to engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment

which can be expected to result in death or which has lasted or can be expected to

last for a continuous period of not less than 12 months." 42 U.S.C.

§ 1382c(a)(3)(A); 20 C.F.R. § 416.905(a).  To satisfy this requirement, a claimant

must have a severe physical or mental impairment that makes it impossible to do

his or her previous work or any other substantial gainful work that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.905(a).  Unlike with disability insurance benefits under Title II of the Social Security Act, "[i]nsured status is irrelevant in determining a claimant's eligibility for supplemental security income benefits" under Title XVI of the Social Security Act. *Snyder v. Colvin*, No. 3:16-CV-01689, 2017 WL 1078330, at *1 (M.D. Pa. Mar. 22, 2017).  Supplemental Security Income "is a federal income supplement program funded by general tax revenues (not social security taxes)" "designed to help aged, blind or other disabled individuals who have little or no income." *Id*.

The ALJ follows a five-step sequential-evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 416.920.  Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience, and residual functional capacity ("RFC"). 20 C.F.R. § 416.920(a)(4)(i)–(v).

The ALJ must also assess a claimant's RFC at step four. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 198 n.2 (3d Cir. 2019).  The RFC is "'that which an individual is still able to do despite the limitations caused by his or her

impairment(s).'" *Burnett v Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)); *see also* 20 C.F.R. § 416.945(a)(1).  In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairment identified by the ALJ at step two of his or her analysis. 20 C.F.R. § 416.945(a)(2).

"The claimant bears the burden of proof at steps one through four" of the sequential-evaluation process. *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010).  But at step five, "the burden of production shifts to the Commissioner, who must . . . show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity." *Fargnoli v. Massanari*, 247 F.3d 34, 39 (3d Cir. 2001).

The ALJ's disability determination must also meet certain basic substantive requisites.  Most significantly, the ALJ must provide "a clear and satisfactory explication of the basis on which" his or her decision rests. *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).  "The ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F. 3d 429, 433 (3d Cir. 1999).  The "ALJ may not reject pertinent or probative evidence without explanation." *Johnson*

7

*v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008).  Otherwise, "'the

reviewing court cannot tell if significant probative evidence was not credited or

simply ignored.'" *Burnett*, 220 F.3d at 121 (quoting *Cotter*, 642 F.2d at 705).


## IV.  The ALJ's Decision.

In the July 2022 Decision, the ALJ denied Dejesus's claim for benefits.

*Admin. Tr*. at 10–24.  She proceeded through the five-step sequential-evaluation

process.  At step one of the sequential-evaluation process, the ALJ found that

Dejesus had not engaged in substantial gainful activity since March 13, 2020, the

application date. *Id*. at 13.

At step two of the sequential-evaluation process, the ALJ found that Dejesus

had the following severe impairments: borderline personality disorder, bipolar

disorder, generalized anxiety disorder, major depressive disorder, PTSD, and mood

disorder. *Id*.  She also found that although Dejesus had a history of several physical

impairments, those impairments were not severe. *Id*.[4]

At step three of the sequential-evaluation process, the ALJ found that

Dejesus did not have an impairment or combination of impairments that met or

medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix

---

[4] Because Dejesus does not raise any issues about how the ALJ analyzed her
physical impairments, we do not concentrate on Dejesus's physical impairments
when summarizing the remainder of the ALJ's July 2022 Decision.

1. *Id*. at 14–16.  Specifically, that ALJ considered Listings 12.04, 12.06, 12.08, and 12.15. *Id*. at 14.  In doing so, she considered the four broad areas of mental functioning set forth in the disability regulations for evaluating mental disorders[5] and in the listings, known as the paragraph B criteria,[6] and she determined that Dejesus had mild and moderate limitations in each area. *Id*. at 14–16.  The ALJ recognized that the paragraph B criteria are not an RFC; rather, they "are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation

---

[5] When "mental impairments are at issue, additional inquiries are layered on top of the basic five-step disability analysis." *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 202 (3d Cir. 2019).  The regulations set forth a "special technique" used for evaluating mental impairments. *See* 20 C.F. R. §§ 404.1520a, 416.920a.  As part of that "special technique," a claimant's degree of functional limitation is rated in four broad functional areas: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id*. at § 404.1520a(c)(3), 416.920a(c)(3).  A claimant's degree of limitation in these functional areas is rated using "the following five-point scale: None, mild, moderate, marked, and extreme." *Id*. at §§ 404.1520a(c)(4), 416.920a(c)(4).  The ratings in these four broad functional areas are used at Step 2 to determine if the claimant has a severe mental impairment, and if the claimant has a severe mental impairment, the ratings are also used at Step 3 to determine if the claimant's severe mental impairment meets or equals a listed mental disorder. *Id*. at  §§ 404.1520a(d), 416.920a(d).

[6] The listings for mental disorders contain either two paragraphs (A and B) or three paragraphs (A, B, and C). *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00.A.2.  Except as to Listing 12.05 (intellectual disorder), paragraph B of each of the listings for the mental disorders sets forth the same four functional criteria as set forth in 20 C.F. R. §§ 404.1520a, 416.920a, and the listings use the same five-point rating scale as those regulations. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00.A.2.b, 12.00.E, 12.00.F.  This is what the ALJ is referring to when she refers to the paragraph B criteria.

process[,]" and the RFC "assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment of the areas of mental functioning." *Id*. at 30.  And she asserted that her RFC that follows "reflects the degree of limitation" she "has found in the 'paragraph B' mental function analysis." *Id*. at 16.

The ALJ then determined that Dejesus has the RFC to do work at all exertional levels. *Id*. at 16–17.  She concluded that Dejesus "retains the mental capacity to perform simple, routine tasks[,] . . . simple work-related decisions[,] and [to] tolerate occasional changes in the work setting." *Id*.  She also determined Dejesus "can tolerate occasional interactions with coworkers, so long as there is no requirement to work in tandem with others but can tolerate no interaction with the public." *Id*. at 17.

In making this RFC assessment, the ALJ summarized Dejesus's assertions, testimony, medical records, and treatment notes. *Id*. at 17–20.  The ALJ concluded that although Dejesus's impairments "could reasonably be expected to cause the alleged symptoms," her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." *Id*.

The ALJ also considered the medical opinion evidence and prior administrative findings in the record. *Id*. at 20–21.  The ALJ first considered the opinions of two state agency consultants, Dr. Cardillo and Dr. Deleo. *Id*. at 21.  Dr. Cardillo and Dr. Deleo determined Dejesus had nonsevere physical impairments. *Id*.  The ALJ found the opinions of the state agency consultants "are supported by and consistent with the overall evidence of record." *Id*.  Thus, she found their opinions persuasive.  *Id*.

The ALJ next considered the opinions of two different state agency consultants, Dr. Williams and Dr. Fink. *Id*.  Dr. Williams and Dr. Fink both determined Dejesus "ha[s] moderate limitations in her ability to interact with others and concentrate, persist, or maintain pace and mild limitations in her ability to understand, remember, or apply information and adapt or manage herself." *Id*. Dr. Williams and Dr. Fink further determined that Dejesus "retain[s] the ability to perform simple, routine tasks." *Id*.  The ALJ found Dr. Williams' and Dr. Fink's opinions "are supported by and consistent with the overall evidence of the record[,]" and concluded that their opinions are partially persuasive. *Id*.  She explained that although the findings of mild limitations are supported, "the ongoing nature of her conditions and the treatment received to manage her symptoms warrant a finding of moderate limitation in interacting with others." *Id*. The ALJ further found Dejesus's ongoing "mental health conditions and treatment

prior to and during the relevant period warrant a finding of moderate limitation in adapting or managing herself." *Id*. at 21–22.  She found "that the record warrants further restrictions in the form of no production rate pace work and no interaction with the public due to her anxiety." *Id*. at 22.

The ALJ then considered the opinion of Dejesus's treatment provider, Jessica Dinkel, Licensed Professional Counselor ("Dinkel"). *Id*.  The ALJ recounted Dinkel determined Dejesus had "marked limitations in her ability to ask for help when needed, handle conflicts with others, requests, suggestions, criticisms, correction, challenges, ignore or avoid distractions while working, manage psychologically based symptoms, set realistic goals, and maintain personal hygiene and appropriate attire." *Id*.  Dinkel further determined that Dejesus has:

> moderate limitations in her ability to understand and learn work-life terms, instructions, and procedures, recognize a mistake and correct it, identify and solve problems, cooperate with others, state their [sic] own point of view, initiate or sustain conversation, understand and respond to social cues, keep social interactions free from excessive irritability, sensitivity, argumentativeness, suspiciousness, interact appropriately with the general public, ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness, work at an appropriate and consistent pace, complete tasks in a timely manner, change activities or work settings without being disruptive, sustain ordinary routine and regular attendance, work a full day without needing more than the allotted number or length of rest periods, respond to demands, adapt to changes, distinguish between acceptable and unacceptable work performance, make plans yourself independently of others, and be aware of normal hazards and take appropriating precautions.

*Id*.  In addition, Dinkel determined that Dejesus has mild limitations regarding working with others and would be off task 20% of the time. *Id*.  The ALJ found Dinkel's opinion not persuasive, "as it overly accounts for the claimant's subjective reports of symptoms . . . [and] the opinion is not supported by the evaluator's own examination findings." *Id*.  The ALJ reasoned "the opinion is not supported by or consistent with the overall evidence of the record that notes an improvement in her overall conditions with a change to her medication regimen or later mental status examination findings." *Id*.  The ALJ noted Ms. Dinkel's findings were "overly restrictive" and, thus, not persuasive. *Id*.

The ALJ also noted that she considered the third-party statements in the record, including a function report by Dejesus's friend, Cassandra Bundy. *Id*. at 23.  But Bundy was a nonmedical source and "statements by nonmedical sources . . . are neither valuable nor persuasive to the issue of whether a claimant is disabled or blind under the Social Security Act." *Id.*  The ALJ, therefore, did not analyze the persuasiveness of Bundy's function report. *Id.*

In sum, the ALJ determined that Dejesus has the above-described RFC.  She then turned to step four of the sequential-evaluation process, at which she found that Dejesus has no past relevant work. *Id.* at 23.

At step five of the sequential-evaluation process, the ALJ noted Dejesus was 20 years old.  Then, considering Dejesus's age, education, work experience, and

RFC, as well as the testimony of a vocational expert, the ALJ found that there were jobs[7] that exist in significant numbers in the national economy that Dejesus could perform. *Id*. at 23–24.

In sum, the ALJ concluded that Dejesus was not disabled. *Id*. at 24.  Thus, she denied Dejesus's claim for benefits. *Id.*

## V.  Discussion.

Dejesus's brief is unfocused and touches on many issues.[8] *See doc. 14* (passim).  Dejesus raises certain arguments only in passing, and without citations to the record or caselaw. *See id*.  We will neither develop legal arguments on a party's behalf based on passing mention of error, nor will we dig through the voluminous record to develop such arguments. *See Loewen v. Berryhill*, 707 Fed. Appx. 907, 908 (9th Cir. 2017) (memorandum opinion) (citing *Carmickle v. Commissioner, Social Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (the court does not need to address arguments that were made without specificity); *Indep. Towers of Wash. V. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (the court cannot construct arguments for an appellant, and it will only examine issues

---

[7] Specifically, the ALJ found that Dejesus could perform the requirements of "laboratory sampler carrier," "optical lens matcher," and "weight tester, paper products." *Admin. Tr.* at 24.

[8] We must also note that Dejesus's brief incorrectly asserts that the ALJ denied her claims at steps three and four. *See doc. 14* at 7.

specifically and distinctly argued in an appellant's initial brief)); *see also U.S. v. Dunkel*, 927 F.2d 944 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.") *see also U.S. v. Winkelman*, 548 F. Supp. 2d 142, 150 (M.D. Pa. Mar. 10, 2008) ("We are not pigs searching for truffles and are unwilling to search through the massive record that has been developed in this case to find evidence of these alleged violations.") We thus discuss these arguments no further.

Insofar as Dejesus does develop arguments, she raised two issues on appeal: (1) Did the ALJ fail to consider Dejesus's severe impairments and limitations in crafting the RFC? and (2) Did the ALJ fail to afford proper weight to the opinion of Dejesus's treating source? *Doc. 14* at 1–2.  Because how the ALJ assessed the opinion evidence informed her RFC determination, we first address Dejesus's claim regarding the opinion evidence.  Ultimately, for the reasons discussed below, we conclude that Dejesus's claims are without merit.

## A. The ALJ did not err in her consideration of the opinion evidence.

On March 27, 2017, the regulations regarding opinion evidence shifted. *See Mercado v. Kijakazi*, 629 F. Supp. 3d 260, 279 (M.D. Pa. 2022).  Under the old regulations, "ALJs were required to follow regulations which defined medical opinions narrowly and created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy." *Id.* at 280.  But under the new regulations,

"[t]he range of opinions that ALJs were enjoined to consider were broadened substantially, and the approach to evaluating opinions was changed from a hierarchical form of review to a more holistic analysis." *Id.*  Further, under the old regulations, the ALJ assigns the weight he or she gives to a medical opinion. 20 C.F.R. §§ 404.1527(c), 416.967(c).  Under the new regulations, however, the ALJ evaluates the persuasiveness of medical opinions and prior administrative medical findings using certain factors. 20 C.F.R. §§ 404.1520c(a), 416.920c(a).

Dejesus appears to conflate the new regulations with the old.  She describes the ALJ as "not afford[ing] proper *weight* to the limitations, opinions and statements" of Dinkel (*doc. 14* at 26 (emphasis added)), and yet she also cites the above-described new regulations (*id.* at 23–26).  We note the above paradigm shift in regulations so it is abundantly clear what standard ALJs are held to presently, and what standard we will apply hereafter.

Dejesus includes many arguments within the larger umbrella of the ALJ's consideration of opinion evidence.  Specifically, she argues that the limitations Dinkel recommended as her treatment provider should have been included in the RFC. *Id.* at 26.  But the ALJ found Dinkel's opinion to be unpersuasive, specifically finding it neither supported nor consistent with the overall evidence. *See Admin. Tr.* at 23.  Dejesus argues that the ALJ erred, in part, by failing "to provide any examination of [Dinkle's Mental Residual Functional Capacity

16

Assessment] using the factors under 20 C.F.R. § 404.1520c." *Doc. 14* at 26.  But

"[w]hen weighing medical opinions in Social Security matters, administrative law

judges must *consider* a range of factors, but all they must *explain* are the reasons

for their decisions." *Zaborowski v. Commissioner of Social Security*, --- F.4th ---,

No. 23-2637, 2024 WL 4220691, *1 (3d Cir. Sept. 18, 2024) (emphasis in

original).  Specifically, the ALJ shall consider the factors found in 20 C.F.R.

§ 404.1520(c) but need only explain the factors of supportability and consistency.

*Id.*  Here, the ALJ has satisfied this obligation. *See Admin. Tr.* at 22.

Dejesus also argues that the ALJ erred by finding Dinkel's opinion not

persuasive in the July 2022 Decision although she had previously found Dinkel's

opinion to be persuasive. *Doc. 14* at 27.  The Commissioner, however,

counterargues that the ALJ "was not bound by her previous decision," and instead

made a de novo determination of persuasiveness. *Doc. 18* at 15–16.  We agree with

the Commissioner.  As discussed above, in the July 2022 Decision the ALJ

explained that she did not find Dinkel's opinion to be "supported by or consistent

with the overall evidence of record that notes an improvement in her overall

conditions with a change to her medical regimen or later mental status examination

findings." *Admin. Tr.* at 22.  The ALJ has satisfied her obligation to explain her

findings, and she is not required to specifically acknowledge her past finding in

order to adequately explain her finding on remand. *Cf Norris v. Kijakazi*, NO. 21-

cv-2524, 2023 WL 3674308, *13 (E.D. Pa. May 25, 2023) (finding the ALJ's decision is "supported by more than a 'scintilla' of evidence and, as such, will not be disturbed" where the ALJ found an opinion persuasive in the first instance and only partially persuasive on remand).  On remand, an "ALJ may reach the same conclusion" if it is "based on a proper foundation[,]" *Zuschlag v. Comm'r of Soc. Sec. Admin.*, No. 18-CV-1949, 2020 WL 5525578, at *8 (D.N.J. Sept. 15, 2020), or she may change her conclusion so long as there is "ample evidence in the record[,]" *Malcom v. Barnhart*, 448 F.Supp.2d 595, 604 (D. Del. 2006).  Here, the ALJ's opinion is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019).

Dejesus also points out that the State Agency Consultants' opinions were rendered "approximately one year prior to the hearing in this matter . . . and [having] never examined Claimant and . . . without many of the medical records submitted in this matter." *Doc. 14* at 27–28.  Dejesus appears to rely on bold text to carry much of this argument.  Regardless, the opinions of state agency consultants "merit significant consideration." *Chandler v. Commissioner of Social Security*, 667 F.3d 356, 361 (3d Cir. 2011).  And "because state agency review precedes ALJ review, there is always some time lapse between the consultant's report and the ALJ hearing and decision." *Id.*  Further, the mere fact that some additional medical evidence is received after the agency consultant's report does not

necessarily mean that the ALJ may not rely on the agency consultant's opinions. *Id.* Here, the ALJ appropriately considered the opinions of the state agency consultants, and she explained why she found their opinions persuasive. *See Admin. Tr.* at 21.

### B. The ALJ did not fail to consider Dejesus's severe limitations.

The section of Dejesus's brief that argues error in the RFC are emblematic of the problems that plague the entirety of the brief as discussed above. Dejesus asserts error in passing and always in a conclusory manner, without citing case law. *See doc. 14* at 10–22. In fact, much of Dejesus's argument appears to be found in the word "clearly" strategically placed before a conclusory assertion without any evidentiary or legal support. Dejesus does, however, make meager attempts at developing some arguments in this case—albeit with a dearth of case law—such that we will discuss each of these arguments further.

According to Dejesus, "the ALJ fails to explain how someone experiencing all of these issues would be capable of sustained employment. . . . [and] how this would equate to Claimant being able to work at [Substantial Gainful Activity] level." *Doc. 14* at 10–11. Specifically, she points to various ailments that, according to Dejesus, the ALJ failed to consider in setting forth Dejesus's RFC. *Id.* at 19. She argues that the ALJ failed to consider Dejesus's "anxiety attacks, sleep

disturbance and cutting behavior." *Id*.  But the ALJ does consider these symptoms.
*See, e.g. admin. tr.* at 15, 17, 19.  Moreover, many of the medical records Dejesus
cites to bolster this argument were created prior to the alleged period of disability.
*See doc. 14* at 20 (citing records from 2017 (*Admin. Tr.* at 410, 420, 422, 432, 436,
561)).  And the other records, while from a more relevant time period, were largely
cited by the ALJ. *See Admin. Tr.* at 14, 15, 16, 18, 20.  As to the seven pages
Dejesus cites which the ALJ does not also cite, this record summarizes an office
visit with a treating provider which took place on February 9, 2021, and notes
emotional vulnerability, active passivity, suicidal ideation, and that Dejesus's chief
complaint was "Feeling worse in general." *See Admin. Tr.* at 840–47.  Such
findings are duplicative of the other medical records the ALJ cites.  Moreover, "we
do not expect the ALJ to make reference to every relevant treatment note in a case
where the claimant . . . has voluminous medical records"; rather, we "expect the
ALJ, as the factfinder to consider and evaluate the medical evidence in the record
consistent with his responsibilities under the regulations and case law." *Fargnoli v.
Massanari*, 247 F.3d 34, 42 (3d Cir. 2001).  Here, the ALJ has satisfactorily
considered and evaluated the record.  And she accounted for Dejesus's serious
impairments in the RFC by finding that Dejesus "retains the mental capacity to
perform simple, routine tasks in an environment that does not require production
rate pace work" and limiting her to simple work-related decisions, only occasional

changes in the work setting and interactions with coworkers, and finding that she

cannot participate in any interaction with the public. *Admin. Tr.* at 16–17.

Dejesus also argues that certain significant limitations were "confirmed by

Claimant's testimony[.]" *Doc. 14* at 20.  But the ALJ found that Dejesus's

"statements concerning the intensity, persistence and limiting effects of these

symptoms are not entirely consistent with the medical evidence and other evidence

in the record for the reasons explained in this decision." *Admin. Tr.* at 17.

Arguments based on Dejesus's testimony alone, then, are improper.  The ALJ's

factual findings about Dejesus's testimony are supported by substantial evidence,

with ample citations to the record and discussion about the medical findings. *See*

*Biestek*, 139 S. Ct. at 1154.

Dejesus also argues the "ALJ failed to include proper limitations regarding

Claimant." *Doc. 14* at 22.  Specifically, Dejesus states that the ALJ failed to

include 10 specific limitations "all of which the Vocational Expert opined would

render the Claimant unemployable." *Id.* at 22–23.  But Dejesus cites only to the

portion of the record in which her attorney asked the vocational expert hypothetical

questions about how certain potential limitations would impact Dejesus's ability to

perform the jobs the vocational expert found to be available for Dejesus. *See id.*

(citing *Admin. Tr.* at 81–83, 1512–1516).  Dejesus fails to point to portions of the

record that indicate that these limitations were, in fact, necessary for Dejesus. *See id.*

## VI.  Conclusion.

For the foregoing reasons, we will affirm the decision of the Commissioner. An appropriate order follows.

___***S/Susan E. Schwab***___
Susan E. Schwab
United States Magistrate Judge